1  HABERBUSH & ASSOCIATES, LLP
   DAVID R. HABERBUSH, ESQ., SBN 107190
2  VANESSA M. HABERBUSH, ESQ., SBN 287044
   LANE K. BOGARD, ESQ., SBN 306972
3  444 West Ocean Boulevard, Suite 1400
   Long Beach, CA 90802
4  Telephone: (562) 435-3456
   Facsimile: (562) 435-6335
5  E-mail: lbogard@lbinsolvency.com

6  Proposed Attorneys for Debtor and Debtor-in-Possession

7

8                    UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

10  In re                                    Case No.  2:17-bk-18213-ER

11  PAC ANCHOR TRANSPORTATION, INC.,         **Chapter 11**
    CONSISTING OF THE MERGER OF PAC
12  ANCHOR TRANSPORTATION, INC. AND          **EMERGENCY MOTION OF DEBTOR
    GREEN ANCHOR LINES, INC.,                AND DEBTOR-IN-POSSESSION FOR
13                                           ORDER APPROVING STIPULATION FOR
                                             INTERIM USE OF CASH COLLATERAL
14             Debtor and Debtor-in-Possession.   WITH SECURED CREDITOR
                                             CALIFORNIA UNITED BANK;
15                                           MEMORANDUM OF POINTS AND
                                             AUTHORITIES; DECLARATION OF
16                                           ALFREDO BARAJAS IN SUPPORT OF
                                             EMERGENCY MOTION AND IN
17                                           SUPPORT OF HEARING MOTION ON
                                             EMERGENCY BASIS
18

19                                           **Hearing Date**
                                             Date:  July 13, 2017
20                                           Time:  10:00 a.m.
                                             Ctrm:  1568
21                                                  255 E. Temple Street
                                                    Los Angeles, CA 90012
22

23

24       Pac Anchor Transportation, Inc., Consisting of the Merger of Pac Anchor Transportation, Inc.

25  and Green Anchor Lines, Inc., Debtor and Debtor-in-Possession herein (hereinafter referred to as

26  "Debtor"), hereby makes this emergency motion seeking an order approving a stipulation between

27  Debtor and California United Bank ("Lender"), authorizing interim use of cash collateral (the

28  "Stipulation").

*HABERBUSH & ASSOCIATES, LLP*
*ATTORNEYS AT LAW*
*444 WEST OCEAN BOULEVARD, SUITE 1400*
*LONG BEACH, CA 90802*

1    On July 6, 2017, Debtor filed a voluntary petition for relief under the Bankruptcy Code. Pursuant

2    to Sections 1107 and 1108 of the Bankruptcy Code, Debtor retained possession of its assets and is

3    authorized to continue the operation and management of its business.

4    Debtor and Lender have stipulated to the use of cash collateral, and, specifically, to the use of

5    income generated by Debtor's business. Lender has a lien on all of Debtor's personal property and

6    general intangibles including Debtor's cash accounts receivable, and certain identified tractors.

7    Use of cash collateral to pay Debtor's normal, regular, and reasonable expenses is required for

8    Debtor to continue its operations. Recognizing this need, and wishing to preserve its collateral, Lender

9    has entered into a stipulation authorizing the use of cash collateral described in the below Motion, as

10   well as in the Stipulation. By this Motion, Debtor seeks approval from this Court of the Stipulation.

11   WHEREFORE, Debtor prays for an order of this Court approving the Stipulation and authorizing

12   Debtor use of cash collateral on the terms set forth in the Motion, and for such other and further relief

13   as the Court may deem just and proper.

14                                        Respectfully submitted,

15                                        HABERBUSH & ASSOCIATES, LLP

16

17

18

19   Date: July 10, 2017                  By, _____

20                                             LANE BOGARD, Proposed Attorneys for Debtor
                                               and Debtor-In-Possession

21

22

23

24

25

26

27

28

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

## MEMORANDUM OF POINTS AND AUTHORITIES

By its Motion, Debtor seeks an order of this Court seeking an order approving a stipulation between Debtor and Lender authorizing the interim use of cash collateral.

## I.    FACTUAL BACKGROUND

On July 6, 2017, Debtor filed a voluntary petition for relief under the Bankruptcy Code (the "Petition Date'). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtor retained possession of its assets and is authorized to continue the operation and management of its business. (See Declaration of Alfredo Barajas at ¶3).

### A.    Debtor's Business and Creditors

Debtor is a trucking company located in Wilmington, California, that provides trucking services throughout the western United States. (See Declaration of Alfredo Barajas at ¶4).

Debtor has six secured creditors. Five of Debtor's secured creditors have liens on Debtor's trucks and/or equipment. Therefore, Debtor does not have cash collateral in relation to these creditors liens. *See* 11 U.S.C. § 552. However, Debtor's sixth secured creditor, California United Bank ("Lender"), has a lien on all of Debtor's personal property and general intangibles including Debtor's cash accounts receivable. (See Declaration of Alfredo Barajas at ¶ 5).

As of July 6, 2017, Debtor had approximately $1,500,000 in cash, approximately $2,000,000 in accounts receivable, and vehicles having a combined value of approximately $8,000,000. (See Declaration of Alfredo Barajas at ¶ 6).

By way of background, Debtor has filed this bankruptcy proceeding for the primary purpose of resolving its potential liability associated with its practice of compensating its drivers as 1099 independent contractors rather than as W-2 hourly employees. Due to the disputes related to its employment practices that are described below, prior to the bankruptcy filing, Debtor began converting its drivers from independent contractors to employees. Debtor did so not as an admission of having committed unfair labor practices, unfair competition, or any other action involving unlawful employment practices but to ensure that future lawsuits are cut off and so that it can effectively reorganize through this bankruptcy proceeding without risk of future litigation or potential liability. Debtor's conversion of its drivers from independent contractors to hourly employees relates to how the drivers are

1    compensated.    Previously, Debtor's drivers were paid as 1099 independent contractors with no

2    withholdings taken for taxes.    Now, those drivers that have been converted to the new employment

3    model are compensated by W-2 hourly wages and withholdings are taken from this compensation as

4    required by applicable law.    This conversion process has not yet been completed, but Debtor has

5    converted approximately 40 of its 80 drivers to hourly employees to date.    Debtor will continue to

6    convert its drivers to hourly employees during the bankruptcy process.    (See Declaration of Alfredo

7    Barajas at ¶ 7).

8           Prior to the bankruptcy filing, on or about September 5, 2008, the Attorney General, on behalf

9    of the State of California, brought a lawsuit against Debtor, seeking, among other things a determination

10   of Debtor's liability for unpaid payroll taxes in favor of the State of California.    This commenced the

11   case *People of the State of California, ex rel. Kamala D. Harris v. Pac Anchor Transportation, Inc., et*

12   *al.*, styled case number BC397600, before the Superior Court of California, County of Los Angeles (the

13   "Lawsuit").    The Lawsuit alleged that Debtor engaged in various violations of law due to its employment

14   practice related to its drivers.    The operative complaint in the Lawsuit is the Complaint for Restitution,

15   Penalties, and Injunctive Relief filed on September 5, 2008 (the "Complaint") and the Supplemental

16   Complaint filed on February 18, 2016 (the "Supplemental Complaint").    A true and correct copy of the

17   Complaint is attached hereto and incorporated herein, by this reference, as Exhibit "4".    A true and

18   correct copy of the Supplemental Complaint is attached hereto and incorporated herein, by this reference,

19   as Exhibit "5".    Prior to the bankruptcy case, Debtor employed each of its drivers as an independent

20   contractor.    As such, they were not paid W-2 wages and were instead paid 1099 compensation, and no

21   withholdings for taxes or other required withholdings were taken from their compensation.    All of the

22   allegations in the Lawsuit relate to this employment practice of Debtor resulting in claims for taxes the

23   State alleges should have been withheld from the drivers' compensation already to be paid and that

24   which the State claims was underpaid.    The Lawsuit was pending on the Petition Date and Debtor will

25   remove the Lawsuit to this Court for the reasons set forth below.    (See Declaration of Alfredo Barajas

26   at ¶ 8).

27           The Lawsuit seeks various relief pursuant to alleged violations of California Business and

28   Professions Code § 17200 (unfair competition). The Attorney General, on behalf of the State of

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

California, seeks a determination of Debtor's liability for unpaid payroll taxes in favor of *the State of California* (page 2, line 10 of the Supplemental Complaint) calculated on the basis of alleged unpaid compensation to its truck driver employees, determination and restitution of unpaid compensation on behalf of present and former truck driver employees of Debtor, civil penalties, and injunctive relief.

In addition to the Lawsuit, Debtor has one additional action pending against it related to the way in which it compensated its drivers. This action is entitled *Carlos Mosquera, and Juan Francisco Rodriguez on behalf of themselves and all others similarly situated, v. Pac Anchor Transportation, Inc.*, styled case number BC 664927 filed in the Superior Court of the State of California, County of Los Angeles (the "Class Action"). A true and correct copy of the Class Action Complaint is attached hereto and incorporated herein, by this reference, as Exhibit "6." The Complaint filed in relation to the Class Action shall hereinafter be referred to as the "CAC." (See Declaration of Alfredo Barajas at ¶ 9).

The relief sought in the Attorney General's Supplemental Complaint and the CAC have common allegations related to employment practices, including allegations of misclassification of claims (Supplemental Complaint, page 2, lines 6-7 and page 6, lines 27-28; CAC page 2, lines 10-11 and page 12, lines 6-9), failure to reimburse employees (Supplemental Complaint, page 2, lines 8-9 and page 7, lines 27-28; CAC page 7, lines 5-6), failure to pay minimum wage (Supplemental Complaint, page 2, line 11 and page 8, lines 1-2; CAC page 2, lines 11-17, page 6, lines 7, page 7, line 4, page 14, lines 4-9, page 15, lines 4-6, page 17, lines 18-28, page 19, lines 2-8, and page 21, lines 8-12), failure to provide drivers with itemized statements (Supplemental Complaint, page 7, lines 24-25; CAC page 2, line 18, page 20, line 7-13 and page 21, lines 8-12), that the drivers employed by Debtor do not own their own trucks (Supplemental Complaint, page 2, line 24; CAC page 4, lines 21-22), that the drivers employed by Debtor do not own their own tools and equipment (Supplemental Complaint, page 2, line 25; CAC page 6, line 28-line 1, page 4, line 28 to page 5, line 2), that the drivers employed by Debtor do not own a business or have any customers (Supplemental Complaint, page 2, line 26 and page 7, lines 1-2; CAC page 5, line 16), that the drivers employed by Debtor do not have DOT operating authority (Supplemental Complaint, page 3, lines 1-3; CAC page 5, line 17-19), that the drivers employed by Debtor are not skilled workers (Supplemental Complaint page 3, line 4 and page 7, lines 3-4; CAC page 5, lines 11-12), that the drivers employed by Debtor take all direction from Debtor in the discharge of

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1  their employment responsibilities (Supplemental Complaint, page 3, lines 5-6 and page 7, lines 4-5;

2  CAC page 4, lines 23-24 and lines 26-27, and page 5, lines 13-14), that the drivers employed by Debtor

3  are an integrated part of Debtor's core business (Supplemental Complaint, page 3, line 7-8; CAC page

4  5, lines 5-6), and that the drivers employed by Debtor have no significant opportunity for profit or loss,

5  except to work longer hours (Supplemental Complaint, page 3, line 12 and page 7, line 7-8; CAC page

6  5, lines 9-10). With a few exceptions,[1] which are mere factors in support of the core claim of

7  misclassification of employees as independent contractors and not hourly employees, the bulk of the

8  substantial non-penalty related relief sought in both complaints is compensatory in nature: to recover

9  underpayment of alleged employee compensation and employment-related taxes on such compensation.

10  In the Supplemental Complaint, this relief is labeled restitution, whereas in the CAC it is labeled

11  damages.

12      In addition to the foregoing, the Supplemental Complaint seeks to establish liability for failure

13  to report, deduct and pay over to the State of California payroll taxes related to the alleged non-payment

14  of compensation to the present and former truck driver employees of Debtor. Nevertheless, all of the

15  non-penalty related relief sought in both actions will involve first a determination as to the employment

16  status of the drivers employed by Debtor and, second, if that employment status was misclassified by

17  Debtor as independent contractors, the determination of the underpayment of compensation, if any, to

18  such drivers. The claims for unpaid taxes related to such compensation is not determinable unless and

19  until both misclassification and underpayment of compensation have been litigated to an outcome

20  favorable to both plaintiffs. Moreover, the exact liability for unpaid payroll taxes arises only if

21  misclassification of the truck driver employees of Debtor as independent contractors is litigated and

22  determined. In that event, the liability for withholding taxes from the *compensation already paid* to the

23  truck drivers as independent contractors and liability for interest and penalties related thereto will arise

24  in favor of the State of California and against Debtor, all of which claims are strictly for the benefit of

25  the State of California, and no one else. Secondly, if the Court determines that misclassification of the

26

27      [1]      The Supplemental Complaint includes additional allegations of Debtor's failure to obtain

28  workers compensation insurance (page 2, lines 11-12 and page 7, lines 22-23), and Debtor's ability to
discharge drivers at any time without cause (page 3, line 12).

1   truck driver employees as independent contractors results in additional liability for unpaid compensation

2   to such employees, Debtor has no liability for taxes withheld from such compensation only if and until

3   Debtor pays such compensation to the truck driver employees. It is not until payment of the unpaid

4   wages occurs that the obligation to withhold taxes from such compensation arises. Therefore, the

5   ultimate liability for the withholding taxes does not now exist and will depend upon the actual

6   distribution to be made, if any, to the present and former truck driver employees of Debtor should this

7   Court determine such claims to have been misclassified. Consequently, unless and until distributions are

8   made in this case pursuant to a confirmed Chapter 11 plan of reorganization or a liquidation and

9   distribution under chapter 7 occurs does the obligation to report, withhold, and pay over withholding

10  taxes to the taxing authorities arise. The amount of the compensation to be paid and the taxes to be

11  withheld cannot be determined at this time. However, the determination of prepetition tax claims is a

12  core determination that can and should only be determined by this Court. 28 U.S.C. § 157(b)(2)(B).

13      Debtor concedes that certain of the claims for relief in the Supplemental Complaint are not

14  subject to the automatic stay of 11 U.S.C. § 362, by virtue of the exception set forth in 11 U.S.C. §

15  362(b)(4). Those include the requests for civil penalties and injunctive relief. However, all of the

16  penalties sought by the State of California are directly dependent upon a determination of the number

17  of employment law violations committed by Debtor. Thus, the penalties sought to be imposed against

18  Debtor depend upon the same factual determinations as are raised in both actions. Thus, the litigation

19  of the two actions will be duplicative in almost all respects. Further, the determination of the State's

20  claim for unpaid withholding taxes based on compensation already paid is inextricably bound with a

21  determination of whether the truck driver employees were underpaid. The determination of prepetition

22  tax liability, if any, will involve a determination of any tax liability to be incurred upon payment of

23  additional compensation to employees for prepetition debts because all of such liabilities depend upon

24  the State's ability to prove misclassification of the employment status of the truck driver employees.

25  Consequently, proceeding with any portion of the Supplemental Complaint will be a determination of

26  those matters that are strictly the advancement of the State's sole pecuniary interests based upon the

27  allegation of liability for withholding taxes that should have been reported and paid to the State for

28  compensation already paid to the truck driver employees. Additionally, because Debtor is well into

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1  shifting its employment model from independent contractors to hourly wage employees, subject to

2  certain limitations concerning the time during which Debtor shall have in which to convert all of its

3  drivers to hourly employees, Debtor will consent to an injunction requiring it to shift its employment

4  model to hourly wage employment model provided that such consent is not an admission of having

5  committed unfair labor practices, unfair competition, or any other action involving unlawful employment

6  practices.

7       If this Court determines that relief sought by the Supplemental Complaint, other than for

8  injunctive relief and civil penalties, is not stayed virtue of the exception set forth in 11 U.S.C. §362(b)(4)

9  and is not removable pursuant to 28 U.S.C. §1452(a), Debtor intends to seek injunctive relief from this

10  Court pursuant to its powers under 11 U.S.C. § 105 to prevent duplicative and repetitive litigation of the

11  same underlying facts in two separate forums with possibly two different outcomes and double

12  recoveries[2] because the underlying determinations of misclassification and underpayment of

13  compensation, if any, are identical in all respects and for the Court to determine. Both actions deal with

14  claims against the estate and, as such, should be adjudicated by this Court as part of this Court's core

15  bankruptcy jurisdiction. 28 U.S.C. § 157(b)(2)(B).

16       Additionally, if both the Attorney General and the plaintiffs in the Class Action file proofs of

17  claim in this bankruptcy case, Debtor will seek an order modifying the automatic stay to allow for

18  consolidation of the two proceedings because the underlying determinations of misclassification and

19  underpayment of compensation, if any, are identical in all respects and for this Court to adjudicate as

20  part of the claims process.

21  ///

22

---

23      [2]    The claims asserted in the Supplemental Complaint for restitution are the very same

24  claims as are asserted by the Plaintiffs in the Class Action and thus are duplicative. Pursuant to 11 U.S.C. § 502, a determination of the extent of the duplication of the claims will necessarily take place

25  before this Court and will involve the presentation of the same evidence as will be presented at the trial of the Supplemental Complaint. Judicial economy and avoidance of conflicting and confusing results

26  is best served by imposing a stay while the underlying claims of the Class Action and the claim for restitution in the Supplemental Complaint are litigated and the parties entitled, if any, to such restitution

27  are determined by this Court. Once that determination has been made, and if it is favorable to the plaintiffs in both actions, the stay may terminate so that the Supplemental Complaint may proceed

28  forward with respect to the imposition of penalties based upon the unlawful labor practices having been determined by this Court in a strictly civil context.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

**B.** **Terms of Security Agreement with Lender**

On or about January 10, 2017, Debtor and Lender entered into each of the following (collectively, each as amended, modified, supplemented and restated, the "Loan Documents"):

1.  A Business Loan Agreement (the "Revolving Loan Agreement") pursuant to which Lender agreed to provide to Debtor, and Debtor agreed to pay to Lender, among other obligations, loans and advances up to an aggregate principal amount of $250,000.00 (Loan No. 10802223-1, and referred to as the "Revolving LOC").

2.  A Promissory Note evidencing the Revolving LOC.

3.  A Commercial Security Agreement (the "Revolving LOC Security Agreement").

4.  A Promissory Note evidencing a loan in the original principal amount of $910,170.00 to be paid over a number of months (Loan No. 10802223-5, and referred to as the "Term Loan").

5.  A Commercial Security Agreement (the "Term Loan Security Agreement").

(See Declaration of Alfredo Barajas at ¶ 10).

Pursuant to the Revolving LOC Security Agreement, Debtor granted in favor of Lender a security interest in and lien on all of Debtor's assets, including equipment, inventory, accounts and general intangibles. Pursuant to the Term Loan Security Agreement, Debtor granted in favor of Lender a security interest in and lien on certain identified tractors, as well as all attachments, products and related accounts and general intangibles. (See Declaration of Alfredo Barajas at ¶ 11).

Pursuant to the language of the Revolving LOC Security Agreement, and the language of the Term Loan Security Agreement, the obligations of the Revolving LOC and the obligations of the Term Loan are cross-collateralized. As a result the security interest granted as to the collateral assets set forth in the Revolving LOC Security Agreement and the security interest granted as to the collateral assets described in the Term Loan Security Agreement (collectively, the "Collateral Assets") secure the faithful performance of Debtor's obligations under both the Revolving LOC and the Term Loan. (See Declaration of Alfredo Barajas at ¶ 12).

The liens on the Collateral Assets, including the liens on any of the identified tractors in which a lien is currently held by Lender, are perfected and senior in priority to all other liens, interests, claims

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    and encumbrances affecting the Collateral Assets pursuant to a UCC financing statement, filed with the

2    California Secretary of State, on January 19, 2017 as Instrument No. 177566981565, except only as to

3    those liens on specifically identified vehicles which were financed by other lenders and perfected under

4    applicable law. (See Declaration of Alfredo Barajas at ¶ 13).

5        After application of a payment of $200,000 made shortly before the Petition Date, as of that date,

6    Debtor owes an indebtedness to Lender pursuant to the Loan Documents in the total sum of

7    approximately $635,000 under the Term Loan, and such other allowed fees, costs and charges as defined

8    in the Loan Documents. As of the Petition Date, there was no unpaid advance under the Revolving

9    LOC. (See Declaration of Alfredo Barajas at ¶ 14).

10       Because the Loan Documents provide a security interest in Collateral Assets, including Debtor's

11   accounts receivable and funds on hand as of the Petition Date, Debtor seeks emergency authority for use

12   of cash collateral. Payments of the reasonable, necessary and ordinary monthly expenses must be made

13   out of the accounts receivable and cash on hand in order to increase the value to the estate and Lender

14   by allowing Debtor to continue its operations and continue to protect the viability of the business.

15   Therefore, Debtor has immediate need for the use of the Cash Collateral. (See Declaration of Alfredo

16   Barajas at ¶ 15).

17   II.    **AUTHORITY TO USE CASH COLLATERAL**

18       A.    <u>**Jurisdiction and Venue**</u>

19       This Court has jurisdiction over the case at bar pursuant to 28 U.S.C. §§ 157 and 1334. This

20   matter is considered a core proceeding, pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M). The statutory

21   basis for the relief sought herein arises from 11 U.S.C. §§ 363(c)(2), as well as Federal Rule of

22   Bankruptcy Procedure 4001(b). Venue of Debtor's Chapter 11 proceedings in the Central District of

23   California is proper, pursuant to 28 U.S.C. §§ 1408 and 1409.

24       B.    <u>**Summary of Requested Relief**</u>

25       By this Motion, the above-captioned Debtor respectfully seeks the issuance and entry of an

26   intermim order for authority to, among other things, use (subject to certain terms and conditions) cash

27   collateral within the meaning of section 363(a) of the Bankruptcy Code in which Lender has claimed

28   security interests. Debtor seeks leave of Court to use cash collateral for a period of approximately 30

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1   days, from July 6, 2017 (the Petition Date) until or about August 9, 2017.  Debtor anticipates filing a

2   motion on regular notice for continued use of cash collateral to be heard on or about August 9, 2017.

3   At that time, Debtor will seek authority for continued use of cash collateral.

4          Payments of the reasonable, necessary and ordinary monthly expenses must be made out of the

5   accounts receivable and cash on hand in order to increase the value to the estate and Lender by allowing

6   Debtor to continue its operations and continue to protect the viability of the business. Therefore, Debtor

7   has immediate need for the use of the Cash Collateral.  (See Declaration of Alfredo Barajas at ¶ 15).

8          All funds and accounts receivable collected in the operation Debtor's business that existed on

9   the Petition Date constitute cash collateral as defined by 11 U.S.C. § 363 (the "Cash Collateral").

10         Debtor has an immediate need for use of cash collateral to avoid immediate and irreparable harm

11   to the bankruptcy estate.  If such Cash Collateral is not immediately made available to Debtor, it cannot

12   operate its business and will cause an immediate diminution in the value of property of the bankruptcy

13   estate.  Because the continued viability of Debtor's business is in the best interests of all creditors,

14   including Lender, Lender has stipulated to limited use of cash collateral for the payment of expenses

15   incurred in the ordinary course of operating Debtor's business.

16   **C.**    **The Terms of the Stipulation as to Use of Cash Collateral**

17         Debtor and Lender have entered into a stipulation for use of the Cash Collateral.  The Stipulation

18   is attached to the Declaration of Alfredo Barajas as Exhibit "1".  Debtor has also provided mandatory

19   Local Bankruptcy Rule Form 4001-2 as required by the Local Rules.  Further, attached as Exhibit "2",

20   Debtor has provided a copy of the proposed Order in relation to this Motion (the "Order").  In addition,

21   consistent with Federal Bankruptcy Rule 4001(b)(1)(B), Debtor hereby details the following relevant

22   information:

23         Bankruptcy Rule 4001(b)(1)(B)(i): The name of each entity with an interest in the cash collateral:

24         The only entity with an interest in the cash collateral is Lender.  The background facts of

25   Lender's interest in the cash collateral is described in the Order at page 2, line 8 to page 3, line 18 and

26   above.

27   ///

28   ///

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    <u>Bankruptcy Rule 4001(b)(1)(B)(ii): The purposes for the use of the cash collateral</u>:

2        The purposes for the use of cash collateral is to pay Debtor's necessary expenses related to

3    Debtor's continued operations.  Debtor's proposed budget, which was approved by Lender, is attached

4    to this Motion as Exhibit "3".  Debtor's need for cash collateral is also described in the Order at page

5    3, lines 27-28.

6        <u>Bankruptcy Rule 4001(b)(1)(B)(iii): The material terms, including duration, of the use of the cash</u>

7    <u>collateral</u>:

8        The full terms of the Stipulation are set forth in the Order. The material terms of the Stipulation

9    are that Debtor is authorized to immediately use the Cash Collateral in order to continue its business

10    operations in accordance with the Budget set forth in Exhibit "3", and Debtor will not to exceed the

11    amounts set forth in the Budget by more than ten percent both (i) on a line-item basis for each expense

12    category and (ii) in the aggregate.

13        The authorization to use Cash Collateral shall commence as upon entry of the Order approving

14    this Motion and terminating on the earlier of any of the following dates (the "Expiration Date"):  (a) July

15    31, 2017, or such further date as may be agreed to in writing, signed by an authorized agent of Lender,

16    and (b) the first date on which an event of default has occurred.  A hearing on Debtor's request for an

17    order authorizing Debtor's further use of cash collateral on terms other than as provided in this Order

18    shall be held on August 9, 2017 at 10:00 a.m. (the "Further Hearing") before the Court.

19        The full terms of the Stipulation and terms for use of the Cash Collateral are described in the

20    Order at page 3, line 19 to page 11, line 3.

21        <u>Bankruptcy Rule 4001(b)(1)(B)(iv): Any liens, cash payments, or other adequate protection that</u>

22    <u>will be provided to each entity with an interest in the cash collateral or, if no additional adequate</u>

23    <u>protection is proposed, an explanation of why each entity's interest is adequately protected</u>:

24        As adequate protection of Lender's security interest, Lender shall have and is hereby granted by

25    Debtor, effective as of the Petition Date, a "replacement lien" pursuant to Bankruptcy Code sections 361

26    and 363(e) (a "Postpetition Lien") in all prepetition and postpetition assets in which and to the extent

27    Debtor holds an interest, whether tangible or intangible, whether by contract or operation of law, and

28    including all profits and proceeds thereof (collectively, the "Postpetition Collateral", and collectively

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

with the Prepetition Collateral, the "Collateral"), including claims or causes of action possessed by Debtor's bankruptcy estate under sections 544, 545, 547, 548, 553(b), or 723(b), and all proceeds therefrom, but only to the extent there is a diminution in value of the Prepetition Collateral, whether from the use of Cash Collateral or otherwise. The Postpetition Lien in favor of Lender shall be senior in priority to any and all prepetition and postpetition claims, rights, liens and interests, but subject only to any lien or security interest that is valid, perfected and senior to the interest of Lender effective as of the Petition Date and not otherwise avoided and preserved under section 551. This gives Lender the same secured position it would have outside of bankruptcy and protects Lender since its Cash Collateral will be used to fund future operations.

Further, all Cash Collateral, now or hereafter in possession of Debtor shall be deposited by Debtor in a segregated account (the "Designated Account") with Lender and shall be subject to Lender's liens, including the Postpetition Lien (as defined herein).

As further adequate protection, Debtor shall further pay Lender adequate protection payments, in cash, in the amount of $18,555.74 each month, commencing on August 1, 2017, and on the first business day of each month thereafter. This amount is equal to the amount owing under the Loan Documents. Lender may, at its sole discretion, apply such adequate protection payments to any obligations owed by Debtor to Lender under the Loan Documents. This further protects Lender and is sufficient to show that Lender will be paid its secured claim.

Debtor shall timely provide Lender with (a) a monthly report comparing actual collections and expenditures (by expense category) on a cash basis to those set forth in the Budget for each month (a "Reconciliation Report") to be delivered to Lender not later than the 15th day of the month following the month covered by the Reconciliation Report, (b) all reporting and other information as required under the Loan Documents, (c) all documents and information submitted by Debtor to the United States Trustee contemporaneous with such submission, and (d) upon the reasonable request of Lender, such other information pertaining to Debtor's operations, financial affairs, and the Collateral, including bills, invoices, bank statements, cancelled checks, and receipts. Upon the request of Lender, Debtor shall permit Lender reasonable access to any premises occupied by Debtor for the purpose of enabling Lender to inspect and audit the Collateral and Debtor's books and records. Debtor shall also maintain at all

1    times casualty and loss insurance coverage of the Collateral in compliance with the United States Trustee

2    Guidelines and in an amount acceptable to Lender to sufficiently cover Lender's interests in the

3    Collateral.  Such insurance shall specifically include Lender as a loss payee and additional insured.

4    Debtor shall deliver proof of such insurance to Lender within 5 days of the entry of the Order. This will

5    allow Lender to ensure the Cash Collateral is protected and that Debtor complies with the terms of the

6    Order.

7           In the event of a default, Lender shall give written notice of default (a "Notice of Default") via

8    email, facsimile or overnight mail to (a) Debtor and (b) counsel for Debtor.  On and after the Expiration

9    Date, or upon delivery of a Notice of Default, Debtor shall be prohibited from any further use of Cash

10   Collateral without either (i) further written consent of Lender or (ii) order of the Court which order was

11   obtained after actual notice to Lender and its counsel.  Even though Debtor cannot use Cash Collateral

12   after delivery of a Notice of Default, if Debtor cures such default in full on or before the fifth calendar

13   day after delivery of the Notice of Default, Debtor's ability to use Cash Collateral under the terms of this

14   Order is restored on the express terms of the Order.  If Debtor fails to cure an Event of Default on or

15   before the 5th calendar day after delivery of the Notice of Default, Lender may (i) file a declaration

16   setting forth the evidence of the default to which the Notice of Default relates and (ii) lodge an order

17   granting Lender immediate relief from the automatic stay to exercise any and all rights and remedies

18   with respect to its Collateral. Debtor waives any objection to entry of the order, and the Court shall enter

19   the order without further notice or hearing.  Additionally, any such order shall (A) include a waiver of

20   the 14-day stay described by Bankruptcy Rule 4001(a)(3) and (B) be binding and effective despite any

21   conversion of this Case to a case under any other chapter of the Bankruptcy Code.   The automatic stay

22   provisions of section 362 and any other restriction or injunction imposed by an order of the Court or by

23   law are hereby modified and vacated without further notice, application, motion, hearing, or order of the

24   Court to the extent necessary to permit Lender to perform any act authorized or permitted under the

25   Order.

26          These terms are described in the Stipulation at page 5, line 7 to page 9, line 28.

27   ///

28   ///

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

F:\H.A\clients\ACTIVE\Pac Anchor - 1108\Bankruptcy\Pleading\Cash Collateral\CASH.COLLATERATIO.MTN          14          THIS DOCUMENT PREPARED ON RECYCLED PAPER

1  **III.    CONCLUSION**

2          In sum, because use of cash collateral is essential to Debtor's continued operations and viability,

3  Debtor requests that this Court grant the Motion and approve the Stipulation on an emergency basis and

4  authorize Debtor to use the Cash Collateral on the terms described in the Stipulation and Order, Exhibits

5  "1" and "2" to this Motion.

                                    Respectfully submitted,

7                                   HABERBUSH & ASSOCIATES, LLP

11  Date: July 10, 2017             By,

                                    LANE BOGARD, Proposed Attorneys for Debtor and
12                                  Debtor-In-Possession

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

### DECLARATION OF ALFREDO BARAJAS

I, Alfredo Barajas, hereby declare and state:

1.    I am an individual over the age of 18 years and have personal knowledge of the facts stated herein. If I were called as a witness, I would and could competently testify to the following facts, under penalty of perjury.

2.    I am the owner and President of Pac Anchor Transportation, Inc., Consisting of the Merger of Pac Anchor Transportation, Inc. and Green Anchor Lines, Inc. ("Debtor"). I am actively involved in all of Debtor's operations. I personally participate in and have personal knowledge of all of Debtor's operations, finances, and activities. This declaration is given in support of Debtor's Emergency Motion for an order approving stipulation for interim use of cash collateral with secured creditor California United Bank (the "Motion"). This declaration is also given in support of hearing the Motion on an emergency basis.

3.    On July 6, 2017, Debtor filed a voluntary petition for relief under the Bankruptcy Code (the "Petition Date"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtor retained possession of its assets and is authorized to continue the operation and management of its business.

4.    Debtor is a trucking company located in Wilmington, California, that provides trucking services throughout the western United States.

5.    Debtor has six secured creditors. Five of Debtor's secured creditors have liens on Debtor's trucks and/or equipment. Therefore, Debtor does not have cash collateral in relation to these creditors liens. *See* 11 U.S.C. § 552. However, Debtor's sixth secured creditor, California United Bank ("Lender"), has a lien on all of Debtor's personal property and general intangibles including Debtor's cash accounts receivable.

6.    As of July 6, 2017, Debtor had approximately $1,500,000 in cash, approximately $2,000,000 in accounts receivable, and vehicles having a combined value of approximately $8,000,000.

7.    By way of background, Debtor has filed this bankruptcy proceeding for the primary purpose of resolving its potential liability associated with its practice of compensating its drivers as 1099 independent contractors rather than as W-2 hourly employees. Due to the disputes related to its employment practices that are described below, prior to the bankruptcy filing, Debtor began converting

its drivers from independent contractors to employees. Debtor did so not as an admission of having committed unfair labor practices, unfair competition, or any other action involving unlawful employment practices but to ensure that future lawsuits are cut off and so that it can effectively reorganize through this bankruptcy proceeding without risk of future litigation or potential liability. Debtor's conversion of its drivers from independent contractors to hourly employees relates to how the drivers are compensated. Previously, Debtor's drivers were paid as 1099 independent contractors with no withholdings taken for taxes. Now, those drivers that have been converted to the new employment model are compensated by W-2 hourly wages and withholdings are taken from this compensation as required by applicable law. This conversion process has not yet been completed, but Debtor has converted approximately 40 of its 80 drivers to hourly employees to date. Debtor will continue to convert its drivers to hourly employees during the bankruptcy process.

8.    Prior to the bankruptcy filing, on or about September 5, 2008, the Attorney General, on behalf of the State of California, brought a lawsuit against Debtor, seeking, among other things a determination of Debtor's liability for unpaid payroll taxes in favor of the State of California. This commenced the case *People of the State of California, ex rel. Kamala D. Harris v. Pac Anchor Transportation, Inc., et al.*, styled case number BC397600, before the Superior Court of California, County of Los Angeles (the "Lawsuit"). The Lawsuit alleged that Debtor engaged in various violations of law due to its employment practice related to its drivers. The operative complaint in the Lawsuit is the Complaint for Restitution, Penalties, and Injunctive Relief filed on September 5, 2008 (the "Complaint") and the Supplemental Complaint filed on February 18, 2016 (the "Supplemental Complaint"). A true and correct copy of the Complaint is attached hereto and incorporated herein, by this reference, as Exhibit "4". A true and correct copy of the Supplemental Complaint is attached hereto and incorporated herein, by this reference, as Exhibit "5". Prior to the bankruptcy case, Debtor employed each of its drivers as an independent contractor. As such, they were not paid W-2 wages and were instead paid 1099 compensation, and no withholdings for taxes or other required withholdings were taken from their compensation. All of the allegations in the Lawsuit relate to this employment practice of Debtor resulting in claims for taxes the State alleges should have been withheld from the drivers' compensation already to be paid and that which the State claims was underpaid. The Lawsuit was

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1  pending on the Petition Date and Debtor will remove the Lawsuit to this Court for the reasons set forth

2  below.

3          9.      In addition to the Lawsuit, Debtor has one additional action pending against it related to

4  the way in which it compensated its drivers. This action is entitled Carlos Mosquera, and Juan Francisco

5  Rodriguez on behalf of themselves and all others similarly situated, v. Pac Anchor Transportation, Inc.,

6  styled case number BC 664927 filed in the Superior Court of the State of California, County of Los

7  Angeles (the "Class Action"). A true and correct copy of the Class Action Complaint is attached hereto

8  and incorporated herein, by this reference, as Exhibit "6." The Complaint filed in relation to the Class

9  Action shall hereinafter be referred to as the "CAC."

10         10.     On or about January 10, 2017, Debtor and Lender entered into each of the following

11  (collectively, each as amended, modified, supplemented and restated, the "Loan Documents"):

12              i.     A Business Loan Agreement (the "Revolving Loan Agreement") pursuant to

13  which Lender agreed to provide to Debtor, and Debtor agreed to pay to Lender, among other obligations,

14  loans and advances up to an aggregate principal amount of $250,000.00 (Loan No. 10802223-1, and

15  referred to as the "Revolving LOC").

16              ii.    A Promissory Note evidencing the Revolving LOC.

17              iii.   A Commercial Security Agreement (the "Revolving LOC Security Agreement").

18              iv.    A Promissory Note evidencing a loan in the original principal amount of

19  $910,170.00 to be paid over a number of months (Loan No. 10802223-5, and referred to as the "Term

20  Loan").

21              v.     A Commercial Security Agreement (the "Term Loan Security Agreement").

22         11.     Pursuant to the Revolving LOC Security Agreement, Debtor granted in favor of Lender

23  a security interest in and lien on all of Debtor's assets, including equipment, inventory, accounts and

24  general intangibles. Pursuant to the Term Loan Security Agreement, Debtor granted in favor of Lender

25  a security interest in and lien on certain identified tractors, as well as all attachments, products and

26  related accounts and general intangibles.

27         12.     Pursuant to the language of the Revolving LOC Security Agreement, and the language

28  of the Term Loan Security Agreement, the obligations of the Revolving LOC and the obligations of the

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

Term Loan are cross-collateralized. As a result the security interest granted as to the collateral assets set forth in the Revolving LOC Security Agreement and the security interest granted as to the collateral assets described in the Term Loan Security Agreement (collectively, the "Collateral Assets") secure the faithful performance of Debtor's obligations under both the Revolving LOC and the Term Loan.

13.     The liens on the Collateral Assets, including the liens on any of the identified tractors in which a lien is currently held by Lender, are perfected and senior in priority to all other liens, interests, claims and encumbrances affecting the Collateral Assets pursuant to a UCC financing statement, filed with the California Secretary of State, on January 19, 2017 as Instrument No. 177566981565, except only as to those liens on specifically identified vehicles which were financed by other lenders and perfected under applicable law.

14.     After application of a payment of $200,000 made shortly before the Petition Date, as of that date, Debtor owes an indebtedness to Lender pursuant to the Loan Documents in the total sum of approximately $635,000 under the Term Loan, and such other allowed fees, costs and charges as defined in the Loan Documents. As of the Petition Date, there was no unpaid advance under the Revolving LOC.

15.     Because the Loan Documents provide a security interest in Collateral Assets, including Debtor's accounts receivable and funds on hand as of the Petition Date, Debtor seeks emergency authority for use of cash collateral. Payments of the reasonable, necessary and ordinary monthly expenses must be made out of the accounts receivable and cash on hand in order to o increase the value to the estate and Lender by allowing Debtor to continue its operations and continue to protect the viability of the business. Therefore, Debtor has immediate need for the use of the Cash Collateral.

16.     Debtor and Lender have stipulated to the use of Cash Collateral. A true and correct copy of the Stipulation is attached hereto as Exhibit "1". The Stipulation approves the proposed form of Order to approve the use of Cash Collateral. The proposed order is attached hereto and incorporated herein, by this reference, as Exhibit "2." The purposes for the use of cash collateral is to pay Debtor's necessary expenses related to Debtor's continued operations. Debtor's proposed budget, which was approved by Lender, is attached hereto and is incorporated herein, by this reference, as Exhibit "3". The Budget reflects the projected income and expenses of Debtor based on Debtor's historical operations.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1  Budget reflects the projected income and expenses of Debtor based on Debtor's historical operations.

2  I believe they are accurate and Debtor will not to exceed the amounts set forth in the Budget by more

3  than ten percent both (i) on a line-item basis for each expense category and (ii) in the aggregate.

4      EXECUTED AT Wilmington_____, CALIFORNIA, THIS _7th_ DAY OF JULY, 2017.

5      I declare under penalty of perjury that the foregoing is true and correct.

6

7

8      ALFREDO BARAJAS, Declarant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

F:\PLA\clients\ACTIVE\Plu. Anchor - 1108\Bankruptcy\Pleading\Cash Collateral\Ratln\CASH COLLATERAL MTN -20 final.wpd

THIS DOCUMENT PREPARED ON RECYCLED PAPER

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

444 West Ocean Boulevard, Suite 1400, Long Beach, CA 90802

A true and correct copy of the foregoing document entitled (*specify*):  **EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER APPROVING STIPULATION FOR INTERIM USE OF CASH COLLATERAL WITH SECURED CREDITOR CALIFORNIA UNITED BANK; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ALFREDO BARAJAS IN SUPPORT OF EMERGENCY MOTION AND IN SUPPORT OF HEARING MOTION ON EMERGENCY BASIS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 10, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Vanessa M Haberbush**    vhaberbush@lbinsolvency.com,
  dhaberbush@lbinsolvency.com,ahaberbush@lbinsolvency.com,abostic@lbinsolvency.com,haberbush.assistant
  @gmail.com,jborin@lbinsolvency.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **July 10, 2017** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 10, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 10, 2017 | Alexander S. Bostic | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

**The following will be served via First Class mail**

Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street,
Suite 1560 / Courtroom 1568
Los Angeles, CA 90012

**The following will be served via US Express Mail**

Trapac International
750 College Road East
Princeton, NJ 08540

Tec Equipment, Inc
P.O. Box 11272
Portland, OR 97211

Kaiser Foundation Health Plan
P.O. Box 23250
San Diego, CA 92193-3250

Emodal (SSAT Pool)
700 Pier A Plaza
Long Beach, CA90813

Flexi Van Leasing
P.O. Box 3228
Boston, MA 02241

Direct Chassis Link
3525 Whitehall Park
Charlotte, NC 28273

Office of The United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

**The following will be served by electronic mail**

California United Bank
C/O Daniel Slate
dslate@buchalter.com

BMO Harris Bank
johnt.carter@bmoff.com

BrockmanProperties
bak_magnitude@msn.com

Carlos Mosquera
C/O Brian S. Kabaleck
bak@bklawyers.com

Inland Kenworth (US) Inc.
Tiffaniflores@inland-group.com

Juan FranciscoRodriguez
C/O Brian S.Kabaleck
bak@bklawyers.com

Mack Financial Services
bankruptcygroup@vfsco.com.

Maersk
NA.Liner.AccountsReceivable@nykgroup.com

People of the State of California
Attn: Timothy J. Kolesnikow
timothy.kolenskiow@doj.ca.gov

Prologis
kdergham@prologis.com

SC Fuels
tuonga@scfuels.com

Wardini H A Company
tonyc@wardinihacompany.com

Westran Idealease (Westrux)
johnt.carter@bmoff.com

Wells Fargo Equipment Finance
PhillipSockolov@WellsFargo.Com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**