HABERBUSH & ASSOCIATES, LLP
DAVID R. HABERBUSH, ESQ., SBN 107190
VANESSA M. HABERBUSH, ESQ., SBN 287044
444 West Ocean Boulevard, Suite 1400
Long Beach, CA 90802
Telephone: (562) 435-3456
Facsimile: (562) 435-6335
E-mail: vhaberbush@lbinsolvency.com

Proposed Attorneys for Debtor and Debtor-in-Possession.

**FILED & ENTERED**

**JUL 13 2017**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

**CHANGES MADE BY COURT**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>PAC ANCHOR TRANSPORTATION, INC., CONSISTING OF THE MERGER OF PAC ANCHOR TRANSPORTATION, INC. AND GREEN ANCHOR LINES, INC.,<br><br>    Debtor and Debtor-in-Possession. | Case No. 2:17-bk-18213-ER<br><br>**Chapter 11**<br><br>**ORDER AUTHORIZING DEBTOR'S INTERIM USE OF CASH COLLATERAL PURSUANT TO STIPULATION**<br><br>**Hearing Date**<br>Date:   July 13, 2017<br>Time:   10:00 a.m.<br>Ctrm:   1568<br>            255 E. Temple Street<br>            Los Angeles, CA 90012 |

On July 10, 2017, Pac Anchor Transportation, Inc., Consisting of the Merger of Pac Anchor Transportation, Inc. and Green Anchor Lines, Inc. ("**Debtor**"), the debtor in the above captioned case (the "**Case**"), filed its Motion for Order Authorizing Debtor's Interim Use of Cash Collateral Pursuant to Stipulation (the "**Motion**").

Having considered the Motion, the stipulation between Debtor and California United Bank ("**Lender**") to the findings set forth herein and entry of this Order with respect to Debtor's interim use of cash collateral and the provision of adequate protection in favor of Lender on the terms and

conditions provided herein, and based thereon and for the reasons set forth in the tentative ruling, which the Court adopts as its final ruling [Doc. No. 25],

**BASED ON THE MOTION, THE PAPERS FILED IN SUPPORT, AND THE STATEMENTS OF COUNSEL AT THE HEARING ON THE MOTION, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

    A.    <u>Bankruptcy</u>.

        1.    On July 6, 2017 (the "**Petition Date**"), Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") commencing the Case.

    B.    <u>Loan Agreement</u>.

        1.    On or about January 10, 2017, Debtor and Lender entered into each of the following (collectively, each as amended, modified, supplemented and restated, the "**Loan Documents**"):

           A.    A Business Loan Agreement (the "**Revolving Loan Agreement**") pursuant to which Lender agreed to provide to Debtor, and Debtor agreed to pay to Lender, among other obligations, loans and advances up to an aggregate principal amount of $250,000.00 (Loan No. 10802223-1, and referred to as the "**Revolving LOC**").

           B.    A Promissory Note evidencing the Revolving LOC.

           C.    A Commercial Security Agreement (the "**Revolving LOC Security Agreement**").

           D.    A Promissory Note evidencing a loan in the original principal amount of $910,170.00 to be paid over a number of months (Loan No. 10802223-5, and referred to as the "**Term Loan**").

           E.    A Commercial Security Agreement (the "**Term Loan Security Agreement**").

        2.    Pursuant to the Revolving LOC Security Agreement, Debtor granted in favor of Lender a security interest in and lien on all of Debtor's assets, including equipment, inventory, accounts and general intangibles.  Pursuant to the Term Loan Security Agreement,

Debtor granted in favor of Lender a security interest in and lien on certain identified tractors, as well as all attachments, products and related accounts and general intangibles.

3. Pursuant to the language of the Revolving LOC Security Agreement, and the language of the Term Loan Security Agreement, the obligations of the Revolving LOC and the obligations of the Term Loan are cross-collateralized. As a result the security interest granted as to the collateral assets set forth in the Revolving LOC Security Agreement and the security interest granted as to the collateral assets described in the Term Loan Security Agreement (collectively, the "**Collateral Assets**") secure the faithful performance of Debtor's obligations under both the Revolving LOC and the Term Loan.

4. Debtor asserts that the liens on the Collateral Assets, including the liens on any of the identified tractors in which a lien is currently held by Lender, are perfected and senior in priority to all other liens, interests, claims and encumbrances affecting the Collateral Assets pursuant to a UCC financing statement, filed with the California Secretary of State, on January 19, 2017 as Instrument No. 177566981565, except only as to those liens on specifically identified vehicles which were financed by other lenders and perfected under applicable law.

5. Debtor asserts that after application of a payment of $200,000 made shortly before the Petition Date, as of that date, Debtor owes an indebtedness to Lender pursuant to the Loan Documents in the total sum of approximately $635,000 under the Term Loan, and such other allowed fees, costs and charges as defined in the Loan Documents. As of the Petition Date, there was no unpaid advance under the Revolving LOC.

C. <u>Use of Cash Collateral</u>.

1. <u>Request for Use of Cash Collateral</u>. Debtor desires to use cash collateral (as that term is defined in section 363(a) ("**Cash Collateral**") during the Case. As a condition to such use, Debtor acknowledges that it (i) has reviewed, admits to and does not dispute the findings of fact contained herein and (ii) agrees to the terms and conditions set forth in this Order. Lender is willing to consent to such use of its Cash Collateral upon the admissions, agreements, terms and conditions set forth in this Order, and certain findings of fact and conclusions of law in support of this Order.

3

2.  <u>Need for Use of Cash Collateral</u>.  Debtor asserts that it has an immediate need to use Cash Collateral in order to continue its business operations.

3.  <u>Adequate Protection</u>.  The Cash Collateral constitutes "cash collateral" of Lender within the meaning of section 363(a), and pursuant to sections 361 and 363(e), Lender is entitled to adequate protection of its interests in the Prepetition Collateral in connection with Debtor's use of the Cash Collateral.  The provision of adequate protection as approved by this Order is without prejudice to Lender's rights with respect to whether such adequate protection provided constitutes sufficient "adequate protection" of Lender's interest in the Prepetition Collateral within the meaning of section 361.

Having considered the Motion and all other relevant pleadings, documents and information, based upon the findings of fact and conclusions of law, the Court makes the following Order.

**IT IS HEREBY ORDERED** that:

**Authorization and Conditions to Use of Cash Collateral**.

1.1  <u>Authorization to Use Cash Collateral</u>.  Pursuant to the terms and conditions of this Order, Debtor is authorized to use the Cash Collateral, as follows:

1.1.1  <u>Expiration Date</u>.  Debtor is authorized to use Cash Collateral during the period (the "**Operative Period**") commencing upon entry of this Order and terminating on the earlier of any of the following dates (the "**Expiration Date**"):  (a) August 9, 2017, or such further date as may be agreed to in writing, signed by an authorized agent of Lender, and (b) the first date on which an Event of Default (as defined herein) has occurred.

1.1.2  <u>Budget</u>.  Debtor is authorized to use Cash Collateral solely to pay only those certain expenses actually incurred during the period set forth on the budget attached hereto as <u>Exhibit A</u> or as may be amended or extended by written agreement between Debtor and Lender (the "**Budget**"), not to exceed the amounts set forth in the Budget by more than ten percent both (i) on a line-item basis for each expense category and (ii) in the aggregate.

        1.1.3    <u>Procedure for Use of Cash Collateral</u>.  All Cash Collateral, now or hereafter in possession of Debtor shall be deposited by Debtor in a segregated account (the "**Designated Account**") with Lender and shall be subject to Lender's liens, including the Postpetition Lien (as defined herein).  Debtor's authorization to use Cash Collateral in the Designated Account is expressly limited by the terms of this Order.

2.        **Adequate Protection**.

    2.1    <u>Postpetition Liens</u>.

        2.1.1    <u>Grant of Postpetition Lien</u>.  Lender shall have and is hereby granted by Debtor, effective as of the Petition Date, a "replacement lien" pursuant to Bankruptcy Code sections 361 and 363(e) (a "**Postpetition Lien**") in all prepetition and postpetition assets in which and to the extent Debtor holds an interest, whether tangible or intangible, whether by contract or operation of law, and including all profits and proceeds thereof (collectively, the "**Postpetition Collateral**", and collectively with the Prepetition Collateral, the "**Collateral**"), including claims or causes of action possessed by Debtor's bankruptcy estate under sections 544, 545, 547, 548, 553(b), or 723(b), and all proceeds therefrom, but only to the extent there is a diminution in value of the Prepetition Collateral, whether from the use of Cash Collateral or otherwise.

        2.1.2    <u>Postpetition Lien Priority</u>.  The Postpetition Lien in favor of Lender shall be senior in priority to any and all prepetition and postpetition claims, rights, liens and interests, but subject only to any lien or security interest that is valid, perfected and senior to the interest of Lender effective as of the Petition Date and not otherwise avoided and preserved under section 551.

        2.1.3    <u>Postpetition Lien Perfection</u>.  This Order constitutes sufficient and conclusive evidence of the granting, attachment, priority, perfection, and validity of the Postpetition Lien, effective as of the date and time of entry of this Order, without any further act required under federal, state, or local law requiring notice, filing, registration, recording, possession or other act to validate or perfect a security interest or lien, including without limitation deposit account control agreements, merchant payment agreements, merchant payment direction letters, cash transport agreements, and such other agreements with any party possessing or

asserting an interest in the Collateral (a "**Perfection Act**"). Notwithstanding the foregoing, if Lender, in its sole discretion, elects to effectuate a Perfection Act, Lender is authorized to perform such act, and if requested by Lender, Debtor is authorized to perform such act to the extent necessary or required, and in such event, the subject filing or recording office or agency is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. No defect or failure in connection with an attempt to perform a Perfection Act shall limit, waive, or alter the validity, enforceability, attachment, or perfection of the Postpetition Lien by virtue of entry of this Order.

    2.2    <u>Adequate Protection Payments</u>. Debtor shall pay Lender adequate protection payments, in cash, in the amount of $18,555.74 each month, commencing on August 1, 2017, and on the first business day of each month thereafter. Lender may, at its sole discretion, apply such adequate protection payments to any obligations owed by Debtor to Lender under the Loan Documents.

    2.3    <u>Adequate Protection</u>. Lender does not concede that the adequate protection provided herein constitutes sufficient adequate protection of its interests, and reserves its right to seek any further or different adequate protection of its interest in the Prepetition Collateral.

3.    **Representations; Covenants; and Waivers**.

    3.1    <u>Reporting</u>. Debtor shall timely provide Lender with (a) a monthly report comparing actual collections and expenditures (by expense category) on a cash basis to those set forth in the Budget for each month (a "**Reconciliation Report**") to be delivered to Lender not later than the 15th day of the month following the month covered by the Reconciliation Report, (b) all reporting and other information as required under the Loan Documents, (c) all documents and information submitted by Debtor to the United States Trustee contemporaneous with such submission, and (d) upon the reasonable request of Lender, such other information pertaining to Debtor's operations, financial affairs, and the Collateral, including bills, invoices, bank statements, cancelled checks, and receipts.

3.2     Access to Premises.  Upon the request of Lender, Debtor shall permit Lender reasonable access to any premises occupied by Debtor for the purpose of enabling Lender to inspect and audit the Collateral and Debtor's books and records.

3.3     Insurance.  Debtor shall maintain at all times casualty and loss insurance coverage of the Collateral in compliance with the United States Trustee Guidelines and in an amount acceptable to Lender to sufficiently cover Lender's interests in the Collateral.  Such insurance shall specifically include Lender as a loss payee and additional insured.  Debtor shall deliver proof of such insurance to Lender within 5 days of the entry of this Order.

3.4     Proposed Plan.  Debtor shall provide a complete and final draft of its proposed disclosure statement and plan of reorganization to Lender on or before 30 days before such date as may be set or extended by the Court for filing a proposed disclosure statement and plan of reorganization.  Following any comments or suggested revisions by Lender and any additional modifications thereto, Debtor shall file its proposed disclosure statement and plan of reorganization with the Court on or before such date as may be set or extended by the Court.

3.5     Further Assurances.  Debtor is authorized and shall perform all acts and execute and deliver to Lender all agreements, financing statements, instruments and documents as may be reasonably requested by Lender to effectuate the terms of this Order or as contemplated under this Order.

4.      **Debtors Waivers, Consents and Releases**.

4.1     Debtor's Waivers.  Debtor waives any rights that it may have to (a) use Cash Collateral pursuant to section 363 during the Operative Period on terms other than those set forth in this Order, except under exigent circumstances and pursuant to further order of the Court; (b) incur financing or indebtedness from any other party other than Lender that includes the granting of liens, claims or interests in favor of such other party that are senior or pari passu with the liens, claims and interests in favor of Lender; or (c) object to, contest or seek to reduce any claim or lien in favor of Lender.

4.2     Section 506(c) Waiver.  No costs or expenses of administration incurred during the Operative Period shall be charged against Lender or the Collateral pursuant to sections 105,

Case 2:17-bk-18213-ER    Doc 29    Filed 07/13/17    Entered 07/13/17 16:31:30    Desc
Main Document    Page 8 of 13

506(c), or 552(b) (with respect to the Court's ability to order otherwise as provided in such section), or any similar principle of law, without the prior, express written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

5. **Default; Rights and Remedies; Relief from Stay**.

5.1 Event of Default. The occurrence of any one or more of the following events shall be an Event of Default under this Order: (a) a breach or failure by Debtor to comply with any term, covenant, representation, warranty or requirement of this Order or any other order of the Court; (b) the granting in favor of any party other than Lender of a security interest in or lien upon any property of Debtor or Debtor's estate or a claim against Debtor having priority senior or pari passu with the security interests, liens or claims in favor of Lender, except to the extent that such party had a security interest in or lien upon property of Debtor on the Petition Date which had priority senior or pari passu with the security interests, liens or claims of Lender existing on the Petition Date; (c) entry of an order converting this Case to a case under chapter 7 of the Bankruptcy Code; (d) entry of an order appointing a trustee in this Case; (e) entry of an order granting relief in favor of any other party (including lessors and landlords) that includes enabling such party to exercise state law or contractual rights and remedies with respect to certain asset or assets of Debtor that could have a material adverse effect on Debtor, its business or other assets, or (f) any stay, reversal, vacation or rescission of the terms of this Order, or any modification of any terms of this Order that is not reasonably acceptable to Lender.

5.2 Remedies on Occurrence of Event of Default.

5.2.1 Notice of Default. Upon the occurrence of an Event of Default, Lender shall give written notice of default (a "**Notice of Default**") via email, facsimile or overnight mail to (a) Debtor and (b) counsel for Debtor.

5.2.2 Consequences Upon Notice of Default.

No Further Use of Cash Collateral. On and after the Expiration Date, or upon delivery of a Notice of Default, Debtor shall be prohibited from any further use of Cash Collateral without either (i) further written consent of Lender or (ii) order of the Court which order was obtained after actual notice to Lender and its counsel.

<u>Cure Period</u>.  Even though Debtor cannot use Cash Collateral after delivery of a Notice of Default, if Debtor cures such default in full on or before the fifth calendar day after delivery of the Notice of Default, Debtor's ability to use Cash Collateral under the terms of this Order is restored on the express terms of this Order.

<u>Relief from Automatic Stay</u>.  If Debtor fails to cure an Event of Default on or before the 5th calendar day after delivery of the Notice of Default, Lender may (i) file a declaration setting forth the evidence of the default to which the Notice of Default relates and (ii) lodge an order granting Lender immediate relief from the automatic stay to exercise any and all rights and remedies with respect to its Collateral.  Debtor waives any objection to entry of the order, and the Court shall enter the order without further notice or hearing.  Additionally, any such order shall (A) include a waiver of the 14-day stay described by Bankruptcy Rule 4001(a)(3) and (B) be binding and effective despite any conversion of this Case to a case under any other chapter of the Bankruptcy Code.

5.2.3    <u>Retention of Rights</u>.  Notwithstanding the occurrence of an Event of Default or the Expiration Date, Lender shall retain all rights, interests, liens, privileges, claims and protections pursuant to this Order.  Notwithstanding the occurrence of the Expiration Date, all of the rights, remedies, benefits and protections in favor of Lender pursuant to this Order shall survive such event.

5.2.4    <u>Limited Relief from Automatic Stay to Effectuate Order</u>.  The automatic stay provisions of section 362 and any other restriction or injunction imposed by an order of the Court or by law are hereby modified and vacated without further notice, application, motion, hearing, or order of the Court to the extent necessary to permit Lender to perform any act authorized or permitted under this Order.

6.    **Other Rights and Matters**.

6.1    <u>Power to Waive Rights; Duties to Third Parties</u>.  Lender shall be able to waive any interest, claim, right, remedy or privilege in its favor (a "**Lender Right**") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce any Lender Right, as applicable.  Any waiver by Lender of any Lender Right

1  shall not be or constitute a continuing waiver.  A delay in or failure to exercise or enforce any

2  Lender Right shall neither constitute a waiver of such Lender Right, subject Lender to any liability

3  to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as

4  a defense to any obligation owed by Debtor, any obligor or any other person or entity to Lender.

5    6.2 <u>Incorporation of Definitions and Rules of Construction</u>.

6    Any reference to a "section" shall mean a reference to a section of the Bankruptcy

7  Code.

8    Except to the extent defined in this Order, the definitions of words and phrases set

9  forth in section 101 are incorporated herein by this reference.

10   The rules of construction set forth in section 102 are incorporated herein by this

11 reference.

12   6.3 <u>Reservation of Rights</u>.  This Order is in addition to and without prejudice to the

13 interests, claims, rights, remedies, and privileges under the Bankruptcy Code, applicable

14 documents or agreements, or law, in favor of Debtor, Lender, or any other party in interest, which

15 each such party fully reserves, including rights to seek further, different, or additional adequate

16 protection, to seek relief from the automatic stay, to seek an injunction, to not consent to or oppose

17 any request for further use of Cash Collateral or granting of any interest in any of the Collateral or

18 priority in favor of any other party, to object to any sale of assets, to object to the allowance or

19 payment of compensation of professionals or other persons or entities seeking compensation or

20 reimbursement from Debtor's bankruptcy estate, and to pursue all non-bankruptcy claims, rights

21 and remedies.

22   <u>Further Hearing</u>.  A hearing on Debtor's request for an order authorizing Debtor's further

23 use of cash collateral on terms other than as provided in this Order shall be held on

24 ///

25 ///

26 ///

27

28

August 9, 2017, at 10:00 a.m. (the "**Further Hearing**") before the Court.  Debtor must file further evidence in support of the use of cash collateral by no later than July 26, 2017. Any response to Debtor's further evidence must be filed no later than August 2, 2017.

<span style="color:red">Debtor shall provide notice of the Further Hearing to the Lender and the twenty largest unsecured creditors, and shall file a proof of service so indicating, by no later than July 17, 2017.</span>

**IT IS SO ORDERED.**

### ###

Date: July 13, 2017

*[signature: Ernest M. Robles]*

Ernest M. Robles
United States Bankruptcy Judge

**PAC ANCHOR TRANSPORTATION, INC.**
*Forecast Financial Statements*

| | | |
|---|---|---:|
| ***INCOME STATEMENT*** | | **Jul-17** |
| **REVENUE** | | 1,400,563 |
| TOTAL REVENUES | $ | 1,400,563 |
| | | |
| Cost of Goods Sold | | 17,966 |
| Per Diem | | 30,820 |
| Subcontractors | | 374,300 |
| **COST OF SALES** | | 423,086 |
| | | |
| **GROSS PROFIT** | | 977,477 |
| | | |
| **OPERATING EXPENSES** | | |
| Advertising | | 990 |
| Auto | | 20,893 |
| Auto - Fuel | | 123,469 |
| Auto - Leases | | 5,541 |
| Auto - Repairs and Maintenance | | 50,458 |
| Bank Charges | | 309 |
| Chassis Rental Fees | | 82,652 |
| Computer Software and Support | | 6,808 |
| Depreciation | | 11,205 |
| Dues and Subscritptions | | 175 |
| Equipment Rentals | | 101 |
| Insurance - Auto | | 2,652 |
| Insurance - Health | | 13,552 |
| Insurance - Other | | 45,107 |
| Insurance - Worker's Comp | | 43,021 |
| Legal and Professional | | 1,000 |
| Licenses and Permits | | 27,967 |
| Meals and Entertainment | | 4,942 |
| Office Expense | | 12,725 |
| Parking | | 72 |
| Postage | | 189 |
| Printing | | 448 |
| Rent | | 115,624 |
| Salaries | | 287,868 |
| Taxes - Payroll | | 23,029 |
| Telephone | | 5,228 |
| Travel | | 135 |
| Utilities | | 4,561 |
| **TOTAL OPERATING EXPENSES** | | 890,722 |
| | | |
| **OPERATING INCOME** | | 86,755 |
| | | |
| **OTHER INCOME (EXPENSE)** | | |
| Interest Income | | 31 |
| Interest Expense | | (7,060) |
| TOTAL OTHER | | (7,029) |
| | | |
| **NET INCOME** | | 79,726 |

**PAC ANCHOR TRANSPORTATION, INC.**
*Forecast Financial Statements*

| CASH FLOW STATEMENT | Jul-17 |
|---|---:|
| Net Income | $79,726 |
| Add: Depreciation | 11,205 |
| From Operations | $90,931 |
| | |
| Working Capital Changes: | |
| Loans Payable | |
|   CA United Commercial Loan | (18,467) |
|   Wells Fargo Equipment Finance | (10,369) |
|   TD Auto Finance | (1,680) |
|   Inland Kenworth (US) Inc. | (799) |
|   BMO Harris Bank | (9,595) |
|   Westran Idealease | (3,757) |
|   Mack Financial Services | (1,001) |
|   Mack Financial Services | (5,870) |
|   Net Working Capital Changes | (51,539) |
| | |
| NET CASH FLOW | $39,392 |
| | |
| Cash-Beginning balance | 1,553,150 |
| Cash-Ending balance | $1,592,542 |